## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| XCHANGE TECHNOLOGY | : | Case No. 13-12809(KG) |
| GROUP LLC, et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | **Re: Dkt. No. 53** |
| _____ | : | |

## <u>MEMORANDUM OPINION</u>[1]

### <u>Counsel for Receiver and Foreign Representative</u>

Mary F. Caloway, Esquire
Kathleen A. Murphy, Esquire
Buchanan Ingersoll & Rooney PC
919 North Market Street, Ste. 1500
Wilmington, DE 19801

Jonathan Cho, Esquire
Ken Coleman, Esquire
Laura Hall, Esquire
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020

### <u>Counsel for Winthrop Resources Corporation</u>

Michael D. DeBaecke, Esquire
Blank Rome LLP
1201 N. Market Street, Ste 800
Wilmington, DE 19801

Michael M. Krauss, Esquire
Michael F. Doty, Esquire
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

### <u>United States Trustee</u>

David Buchbinder, Esquire
Office of the United States Trustee
844 King Street, Room 2207
Lockbox 35
Wilmington, DE 19899-0035

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The Court is opining on the Motion of Winthrop Resources Corporation for an Order Directing the Receiver to Comply with the Terms of the Order, pursuant to Sections 105(a), 363, 1501 and 1521 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 9014, (I) Recognizing and Enforcing the Approval Order and Vesting Order, (II) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Any and All Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief (the "Motion"). D.I. 53. The precise relief being sought is payment of past and future amounts due. For the reasons provided, the Court will deny the Motion.

## JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

A. Background

This case arises from a proceeding commenced by Callidus Capital Corporation ("Callidus"), senior secured lender to Xchange Technology Group LLC and certain of its subsidiaries ("Debtors") in Canada under Canada's Bankruptcy and Insolvency Act (the "Canadian Case") and pending before the Ontario Superior Court of Justice (the "Canadian Court"). The Canadian Court appointed Duff & Phelps Canada Restructuring Inc. (the "Receiver") to serve as the receiver for Debtors. In short, in the Canadian Case the

2

Canadian Court approved the sale of Debtors' businesses and assets to 2393134 Ontario, Inc., a wholly owned subsidiary of Callidus, on November 22, 2013 (the "Sale"). The Court thereafter, pursuant to Section 1521 of the Bankruptcy Code, recognized and enforced the Canadian Court's sale order and authorized the Sale . Order, entered November 25, 2013 (the "Sale Order").    The Receiver and Callidus have not yet closed on the Sale.

### B. Dispute at Issue

Debtors[2] and Winthrop Resources Corporation ("Winthrop") are parties to a Lease Agreement, dated December 12, 2012 (the "Lease Agreement"). Winthrop Ex. 1. The Lease Agreement governs Debtors' lease of information technology equipment and software from Winthrop.   At the hearing, Debtors explained their business model which is well known to Winthrop.   Debtors obtain computers from Lenovo, an important Chinese computer manufacturer.   Each year, Debtors receive updated computers and lease the computers to Debtors' customers.  Upon the expiration of Debtors' lease to their customers, Debtors then either sell the computers to their customers or reclaim the computers and lease or sell the now year old computers.  Winthrop's funding enabled Debtors to obtain new computers each year.   Relevant to the issues at hand, Debtors and Winthrop were parties to three lease schedules, Schedules 001, 002 and 003 (the "Lease Schedules"), as follows (Debtors Ex. 4):

---

[2]   The party involved in the instant matter is ITXchange Financial Services LLC, but the Court will refer to "Debtors" for ease of reference.

Summary of Lease Schedules

| Lease Schedule No. | Quarterly Lease Charge | Initial Deposit | Deposit as of May 13, 2014 | Commencement Date | Buyout Deadline |
|---|---|---|---|---|---|
| 001 | $127,283.00 | $127,425.00 | $89,682.66 | January 31, 2013 | October 3, 2013 |
| 002 | $128,900.00 | $128,900.00 | $128,900.00 | June 30, 2013 | March 2, 2014 |
| 003 | $128,916.00 | $128,948.00 | $128,948.00 | September 30, 2013 | June 2, 2014 |

The Lease Schedules reflect the Debtors' annual orders of new computers from Lenovo.

In the Canadian Case and in connection with the Sale, Debtors attempted to assume and assign the Lease Agreement. Winthrop objected. The Receiver thereupon agreed to a carve-out for the Lease Agreement in the Canadian Court's Endorsement which accompanied the Vesting Order, *i.e.*, the Canadian Court's order approving the Sale. The carve-out provided, in part:

> Nothing in the Order constitutes an assignment of the Lease Agreement Number IT 121212 dated December 12, 2012, together with the schedules and riders thereto, between Winthrop Resources Corporation and ITXchange Financial Services LLC DBA Vernon Computer Source and such agreement may not be assigned without the consent of Winthrop or further order of the Court.

In the Sale Order which this Court entered, Debtors and Winthrop agreed to inclusion of the following provision (Sale Order, ¶ 19):

> With regard to that certain Lease Agreement Number Number IT121212 dated December 12, 2012, together with schedules and riders thereto (the "Winthrop Lease"), between Winithrop Resources Corporation ("Winthrop") and ITXchange Financial Services LLC DBA Vernon Computer Source: (i) if the Receiver elects to assume the Winthrop Lease it shall assume the

4

Winthrop Lease and assign it to the Purchaser or its assign or nominee as of the closing date of the Sale; (ii) the Receiver shall promptly pay rent due under the Winthrop Lease for the period since the commencement of the Canadian Proceeding, and the Purchaser shall, in accordance with the Purchase Agreement, promptly pay other amounts necessary to cure payment defaults under the Winthrop Lease, excluding any amounts relating to legal fees incurred by Winthrop (which legal fees shall be resolved at a later date), upon assumption of the Winthrop Lease as of the closing date of the Sale; (iii) the Receiver or the Purchaser, as applicable, will make future lease payments under the Lease as they come due pending the assumption of the Lease; (iv) the Receiver and/or the Purchaser will disclose the identity of the Purchaser or its assign or nominee that will take assignment of the Winthrop Lease to Winthrop and shall provide Winthrop with an organizational chart showing the corporate structure of the Purchaser once such structure is finalized; (v) the Receiver and/or the Purchaser shall provide Winthrop with documents and information reasonably necessary to allow Winthrop to comply with applicable regulatory requirements relating to the assumption and assignment of the Winthrop Lease; and (vi) in the event the Receiver elects not to assume the Winthrop Lease, Winthrop shall be entitled to the immediate possession of all equipment leased under the Winthrop Lease and shall have relief from the automatic stay to collect such equipment without further order of this Court.

In essence, Debtors and Winthrop agreed that the Receiver or Callidus would pay on Debtors' behalf post-petition payments due under the Lease Agreement. Further, issues on Debtors' assumption and /or assignment of the Lease Agreement, including payment of any cure amounts for pre-filing defaults, would be deferred to closing on the Sale. Again, the Sale has not yet closed.

The Lease Agreement provided, among other less relevant terms, that, (1) there was a 12-month initial term beginning on the "Commencement Date," (2) which continued on

a year-to-year basis until terminated, (3) Debtors or Winthrop could terminate a Lease Schedule without cause at the end of the initial term or any later year on 120 written days' notice, and (4) Debtors had the option to purchase the equipment for each Lease Schedule at the end of the initial lease term, provided (a) Debtors had not committed an event of default, (b) Debtors had made all payments, and (c) Debtors gave written notice of the purchase option no less than 120 days prior to the end of the initial term.

Debtors made some late payments, but have now made payment in full of all amounts due Winthrop through the initial term of each Lease Schedule. In turn, Debtors attempted to exercise the option to purchase the equipment for the exercise price of $50,000 for each Lease Schedule, and Debtors understood that they had, in fact, properly exercised their purchase option. Winthrop claims otherwise.

## DISCUSSION

Winthrop takes the position that Debtors did not and could not exercise the purchase option. Winthrop argues that Debtors did not properly or timely notice the buyout and did not satisfy conditions precedent to a buyout.

Winthrop discouraged Debtors' efforts to exercise the purchase option. For example, in email exchanges in which Debtors raised the purchase option, Winthrop side stepped the issue. In addition, Winthrop insists that under the License Agreement, Debtors were obligated and failed to prepare the necessary documents for the sale of the equipment. There is no such requirement in the Lease Agreement.

6

Whether Debtors did or could properly exercise the purchase option is immaterial. First, as the Debtors established in their papers and at the hearing, the Lease Agreement is not an operating lease but a capital lease. Second, the relief Winthrop seeks would lead to an inequitable forfeiture.

In determining whether an agreement is a true lease or a secured financing arrangement under the Bankruptcy Code is a question of state law. *In re Continental Airlines, Inc.*, 932 F.2d 282, 294 (3d Cir. 1991). The Lease Agreement provides that the laws of the State of Minnesota govern. Lease Agreement, ¶ 25. In *FBS Business Finance Corp. v. Edison Financial Group, Inc.*, 464 N.W.2d 304 (Minn. Ct. App. 1990), the Minnesota Court of Appeals discussed Minnesota law on the subject. The Minnesota court observed the significance of several factors. First, the court, quoting at length from 2 J. White & R. Summers, *Uniform Commercial Code* § 23-3, at 251-52 (3rd ed. 1988), noted that it is significant if the lessor is a financier. Winthrop is a technology financier. Next, the important considerations are:

> [W]hether the lessee is required to insure the goods in favor of the lessor for a value equal to the total rental payments; the risk of loss or damage is on the lessee, the lessee is to pay for taxes, repairs and maintenance; there are default provisions governing acceleration and resale; a substantial, non-refundable deposit is required; the goods are to be selected from a third party by the lessee; the rental payments are equivalent to the cost of goods plus interest; the lessor lacks facilities to store or retake the goods; the lease is to be discounted with a bank; warranties normally found in a lease are excluded; the goods are fixtures impractical to remove.

*FBS,* 464 N.W. 2d at 305-06 (quoting White & Summers, Uniform Commercial Code at 251-

252).  The Lease Agreement satisfies nearly all of the considerations which, under Minnesota law, evidence a financing rather than a traditional lease.  The Lease Agreement unequivocally provides that Debtors (1) had the option to purchase the equipment for the relatively nominal consideration of ten percent, (2) were required to maintain property and casualty insuraqnce equal to monthly lease charges plus the original cost of such equipment, (3) bore all risk of loss or damage, (4) were required to reimburse Winthrop for all taxes and fees imposed by any governmental entity, and (5) were entitled to enforce any manufacturer's warranties in their name (there was no warranty from Winthrop).  Lease Agreement, ¶¶ 4, 12, 13 and 14.  Debtors, not Winthrop, selected the purchased equipment from Lenovo, a third party.  It is also important to note that the equipment covered by the Lease Agreement was not equipment which Winthrop sold or leased in the ordinary course of its business.  Furthermore, as the *FBS* court noted as an indication of a financing rather than a lease, Winthrop had the right to accelerate Debtors' obligations upon a default.  All of these factors, together with the important fact that Winthrop is in the financing business, are determinative.  There is no question that the arrangement between Winthrop and Debtors was a financing, not a lease.  Indeed, Debtors booked the Lease Agreement as capital.

Equitable considerations also require the Court to deny Winthrop's request in the Motion.  The Sale Order, ¶ 9, to which Winthrop consented, provides for deferral of cure payments of pre-filing defaults until the Sale.  Thus, Winthrop agreed to forbear from seeking any remedy for prefiling defaults.  In return, as provided in the Sale Order,

8

Debtors would and did pay amounts due through the Lease Schedules. Debtors have now paid all amounts due under the Lease Schedules, with any deficiencies fully covered by the deposits.

Accordingly, if the Court were to grant the relief Winthrop seeks, Winthrop would receive a windfall, a forfeiture which Minnesota law does not countenance. *See, e.g., Coddon v. Youngkrantz,* 562 N.W.2d 39, 43 (Minn. Ct. App. 1997*)*. Debtors would have to pay Winthrop for an entire additional year for year old and less valuable equipment. Equity abhors forfeiture. *52 AmJur Equity*. Where, as here, Winthrop has been compensated in full on a financing arrangement, the Court will not grant it relief which would result in Debtors' forfeiture of its rights under the Lease Agreement and which would require Debtors to make payments which would benefit only Winthrop.

## CONCLUSION

For the foregoing reasons, the Court will enter an Order denying the Motion and directing Winthrop to deliver all documents to Debtors necessary to effect the transfer of title of the property subject to the Lease Agreement and terminating any interest of Winthrop in the subject property.

Dated: December 30, 2014

KEVIN GROSS, U.S.B.J.